PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GARRICK KRLICH, *et al.*, | ) |
| Plaintiffs, | ) CASE NO. 4:17CV0379 |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| JAMES R. TAAFE, *etc.*, *et al.*, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF Nos. 58 and 78, 90, and 95] |

The within matter came on for hearing upon Plaintiff Garrick Krlich's Motion for Preliminary and Permanent Injunction (ECF No. 58).

After notice to the parties, the Court held a hearing on the motion. The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. The Court has also considered the written stipulations (ECF No. 61), the testimony of Plaintiff Garrick Krlich, exhibits (including, but not limited to, a flash drive depicting 255 examples of the "more egregious instances of harassment" (*see* ECF No. 65) and "Traffic Case Information Hardcopy" reports, Hubbard Twp. Police Department "Ohio Uniform Incident Reports," "CFS Summary" reports, "Incident Reports," and "Dispatched Call Summary" reports in Plaintiffs' Notice of Filing Second Supplement (ECF No. 68)),[1] and arguments of counsel offered during the hearing.

---

[1] At the end of the hearing, the Court granted leave to Plaintiffs to supplement the record with these documents, which were submitted on February 7, 2018.

(4:17CV0379)

# I.

Plaintiffs bring a § 1983 action to recover damages for a violation of their rights under the Equal Protection Clause for Defendants James R. Taafe and The City of Hubbard, Ohio's ("Defendants") complicity and active pursuit in a campaign to harass, intimidate, and terrorize Plaintiffs by individuals honking their horns, revving their engines (*i.e.*, loud exhaust and/or accelerating hard), and/or screeching their tires whenever they drive past Plaintiffs' residence. Second Amended Complaint (ECF No. 51 -1).[2] In the instant motion (ECF No. 58), Plaintiffs request the Court issue a preliminary and permanent injunction against Defendants enjoining them from:

- Enforcing their special protocol against Plaintiff as a class-of-one;[3]

---

[2] In July 2017, Plaintiff Garrick Krlich was declared to be a vexatious litigator in Ohio pursuant to Ohio Rev. Code § 2323.52, and is obligated to obtain leave of court prior to initiating proceedings in a state court in Ohio. *Novotny v. Krlich*, No. 2015 CV 01519 (C.P., Trumbull Cty., filed July 12, 2017). The court of appeals dismissed the appeal for lack of jurisdiction. *Novotny v. Krlich*, No. 2017-T-0074, 2017 WL 4779449 (Ohio App. 11th Dist. Oct. 23, 2017). On May 23, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. *Novotny v. Krlich*, 152 Ohio St.3d 1480 (2018).

[3] In March 2018, Plaintiffs filed a Motion for Leave to File *Instanter* a Third Supplement to Their Motion for Preliminary and Permanent Injunction (ECF No. 78). The stated purpose of the supplement is to provide the Court with additional proof that Plaintiffs are in a class-of-one. For good cause shown, ECF No. 78 is granted without opposition.

In the interests of justice, Plaintiffs' Motions for Leave to File *Instanter* a Fourth (ECF No. 90) and Fifth (ECF No. 95) Supplement to Their Motion for Preliminary and Permanent Injunction are granted over the opposition of the Hubbard Defendants. In ECF No. 90, Plaintiffs move the Court for leave to submit additional "evidence" of claimed offenses against them, which include a video on a USB drive of an incident that occurred on March 19, 2018, *see* ECF No. 91, and extensive handwritten logs of other alleged incidents between March 10, 2018 and April 19, 2018 involving harassing, stalking, and disturbing the peace, ECF No. 90-1. In ECF No. 95, Plaintiffs move the Court for leave

(continued...)

(4:17CV0379)

> • Refusing to investigate Plaintiff's reports of harassment and violations of Hubbard's ordinances;
>
> • Refusing to warn, cite, and/or charge those who violate Hubbard's Ordinances 337.19 (Horn, Siren, and Theft Alarm Signal), 337.20 (Muffler, Muffler Cutout, Excessive Smoke, Gas, or Noise), 331.36 (Squealing Tires, "Peeling," Cracking Exhaust Noises), 339.13 (Use of Special Engine Brakes Prohibited), and/or 509.11 (Disturbing Peace of Neighborhood).

ECF No. 58 at PageID #: 533.

## II.

Fed. R. Civ. P. 65 governs the issuance of preliminary injunctions. Four factors are important in determining whether a preliminary injunction is appropriate: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003) (overruled on other grounds in *KP Permanent Make Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. *In re DeLorean Motor Co.*, 755 F.2d at 1229.

---

[3](...continued)
to submit (1) the Affidavit of Ben Patrick, Plaintiffs' next-door neighbor (ECF No. 95-1), and (2) additional extensive handwritten logs of alleged incidents between April 20, 2018 and August 7, 2018 involving harassing, stalking, and disturbing the peace as additional "evidence." Plaintiffs offer of additional documents as evidence, which they believe necessitates the requested injunctive relief, does not cure the defects in Plaintiffs' claims or arguments. Moreover, the Patrick Affidavit (ECF No. 95-1) and CFS Summary prepared by Officer Nancy Tipple (ECF No. 97-1) establish that Plaintiffs were intentionally treated by the Hubbard Defendants in the same manner as others similarly situated, undermining Plaintiffs' class-of-one claim.

(4:17CV0379)

> The Sixth Circuit has held:
>
> The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.

*TriHealth, Inc. v. Board of Commissioners, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005) (citation omitted). The Second Amended Complaint (ECF No. 51-1) does not allege that a fundamental right was burdened or that the alleged conduct targets a suspect class. The third type of equal protection claim is a class-of-one claim. "In [*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)], the Court in the property context, laid out the basic requirements for a valid class-of-one claim: a plaintiff must allege 'that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Franks v. Rubitschun*, 312 Fed.Appx. 764, 766 (6th Cir. 2009).

> A "class of one" plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will. . . . To prevail, they must demonstrate that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the . . . actions were irrational.
>
> \* \* \*
>
> [G]overnmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it.

*Id.* at 788, 790 (emphasis in original) (citations omitted). In *Bertovich v. Village of Valley View, Ohio*, 431 Fed.Appx. 455 (6th Cir. 2011), the Sixth Circuit affirmed the district court dismissal of Bertovich's Fourteenth Amendment claims against Valley View, based on the Village's Fed. R. Civ. P. 12(b)(6) motion. The Court of Appeals stated:

> In dismissing this claim, the district court found that Bertovich had failed to "allege any facts from which one might conclude he was treated differently from others that are similarly situated." A close examination of the factual allegations confirms that Bertovich does not point to any individual who was treated differently, and makes no allegation that any other individual had been able to effect a criminal investigation by his or her request. In fact, Bertovich himself acknowledges that there was an investigation, but asserts that such investigation was only "cursory." Bertovich has not pointed to any facts supporting his contention that a similarly situated victim, without the alleged adversarial relationship with municipal leadership, would enjoy a higher level of attention from law enforcement.
>
> Had we determined that Bertovich's allegations satisfied the differential-treatment pleading requirement, he would nonetheless have failed to state a claim. This is because his allegations also fall short concerning Valley View's lack of a rational basis for the treatment. Although Bertovich makes allegations concerning an "animus" held against him by the Village of Valley View, and Valley View's "desire . . . to protect Cooke from both civil and criminal liability," his allegations include no specific information.

*Id.* at 458.

The Hubbard Defendants argue that law enforcement decisions with respect to investigation, prosecution, and the allocation of resources for the same are inherently discretionary, particularly with offenses as amorphous as honking car horns, revving engines (*i.e.*, loud exhaust and/or accelerating hard), and/or screeching tires. They cite *Engquist v. Oregon Dept. of Agriculture.*, 553 U.S. 591 (2008), as instructive with respect to Plaintiffs' efforts to try and compel the exercise of police discretion. In *Engquist*, the Supreme Court held that the class-of-one theory of equal protection does not apply in the public employment context. *Id.* at 598. In rejecting the class-of-one claim, the Supreme Court reasoned:

> There are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted

(4:17CV0379)

> consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. While recognizing that Plaintiffs' claim is not in the public employment context, *Engquist* has been expanded beyond that context. *See, e.g.*, *Heike v. Guevara*, 519 Fed.Appx. 911, 921-22 (6th Cir. 2013) (recognizing *Engquist* in the context of student athletic scholarship and holding that class-of-one claim must fail). To subject the Hubbard Defendants policing decisions in the case at bar to a class-of-one equal protection challenge would be to expose them to an unjustifiable level of judicial oversight by this Court.

A number of cases from the Sixth Circuit have raised questions regarding the scope of the class-of-one theory after *Engquist*. In *Loesel v. City of Frankenmuth*, 692 F.3d 452 (6th Cir. 2012), the Sixth Circuit explained that "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Id.* at 462 (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005) (concluding that the plaintiff "had not carried its heavy burden of negativing every conceivable basis for the Board's decision")). The Sixth Circuit explained: "Class-of-one claims are generally viewed skeptically because such claims have the potential to turn into an exercise in which juries are second-guessing the legislative process." *Id.* at 461.

*JDC Management, LLC v. Reich*, 644 F. Supp.2d 905 (W.D. Mich. 2009) discusses at length the application of *Engquist* and subsequent cases construing it, noting that courts throughout the country have begun extending *Engquist* beyond the context of public employment to other circumstances requiring the exercise of discretion.

(4:17CV0379)

> [*Engquist*'s] rationale *strongly* suggests that the class-of-one theory is also unavailable in other contexts where government officials must make subjective discretionary decisions, e.g., in its role as a sovereign and regulator.

*Id.* at 910 (emphasis in original).  In *JDC Management, LLC*, the district court quoted a particularly apt passage from the Tenth Circuit's decision in *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004):

> In the wake of *Olech*, lower courts have struggled to define the contours of class-of-one cases.  All have recognized that, *unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision[] made by state actors*.  It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently than others, with regard to everything from zoning to *licensing* to speeding to tax evaluation.  It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review.  *This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decision-making:  a role that is both ill suited to the federal courts and offensive to state and local autonomy in our federal system.*

*JDC Management, LLC*, 644 F. Supp.2d at 924-25 (emphasis in original).

In *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), local child-protection officials failed to protect a young boy from beatings by his father that left him severely brain damaged.  *Id.* at 191-93.  The boy and his mother sued under § 1983, alleging that state officials deprived the boy of his liberty without due process of law[4] by failing to intervene to protect him.  *Id.* at 193.  The Supreme Court held that the substantive component of the Due Process Clause does not "require[] the State to protect the life, liberty, and property of its citizens

---

[4] Plaintiffs argue that the Hubbard Defendants "have been depriving them, and continue to deprive them, of their due process rights by segregating them in, and treating them as, a class of one."  Plaintiffs' Motion for Leave to File Third Amended Complaint *Instanter* (ECF No. 81) at PageID #: 1245.

(4:17CV0379)

against invasion by private actors." *Id.* at 195. The Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.*

The Supreme Court further extended the *DeShaney* doctrine in *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005). As recognized by the Supreme Court in *Town of Castle Rock, Colo.*, mandatory language in a statute does not obviate law enforcement discretion:

> The deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands, is illustrated by *Chicago v. Morales*, 527 U.S. 41 (1999), which involved an ordinance that said a police officer " 'shall order' " persons to disperse in certain circumstances, *id.*, at 47, n. 2. This Court rejected out of hand the possibility that "the mandatory language of the ordinance . . . afford[ed] the police *no* discretion." *Id.*, at 62, n. 32. It is, the Court proclaimed, simply "common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances." *Ibid.* (emphasis added).

*Id.* at 761. In *Town of Castle Rock, Colo.*, the Court rejected a § 1983 claim that a failure to enforce a restraining order gave rise to a claim for a violation of due process. The court noted that the practical necessity for discretion is particularly apparent in a case where the suspect violator is not actually present and his whereabouts are unknown. *Id.* at 762. While the precise holding in *Town of Castle Rock, Colo.* concerned the lack of a protected property interest in the restraining order sufficient to justify a procedural due process claim, the discussion of the discretionary nature of law enforcement and the allocation of resources for the same particularly where the police do not witness a violation, as is required for a minor misdemeanor, and are being contacted only after the fact of the alleged violation    is compelling in the case at bar. Plaintiffs fail to state a class-of-one claim upon which relief can be granted. The Court

(4:17CV0379)

concludes that such a claim does not exist with respect to controlling discretionary decision making of law enforcement officers in the enforcement of municipal ordinances.

In addition, Defendants argue that the Second Amended Complaint (ECF No. 51 -1) fails because it is well-established that failure to investigate and/or prosecute alleged crimes does not give rise to a § 1983 claim for violation of the Equal Protection Clause. *See White v. City of Toledo*, 217 F. Supp. 2d 838 (N.D. Ohio 2002) (Carr, J.).

Plaintiffs also contend that they have been deprived of their fundamental right to enjoy their property free from the unreasonable, excessive, and unending abusive nuisances, to which they have been subjected for the past nearly 10 years, committed by residents and employees of Defendants. In *Tri-Cty. Concerned Citizens Ass'n v. Carr*, No. CIV. A. 98-CV-4184, 2001 WL 1132227 (E.D. Pa. Sept. 18, 2001), *aff'd sub nom. Tri-Cty. Concerned Citizens Ass'ns v. Carr*, 47 Fed.Appx. 149 (3d Cir. 2002), for example, the court was "hard pressed to find either controlling or persuasive authority which establishes a fundamental right in . . . the unfettered use and enjoyment of one's land." *Id.* at *3. As such, the court held that the plaintiffs' claimed "right not to be subjected to common nuisances . . . fail[ed] to raise a constitutionally protected interest. *Id.* at *4 (citing and quoting *Stop-Save Twp. Open Places, Inc. v. Bd. Of Supervisors*, No. 96-7325, 1996 U.S. Dist. LEXIS 16998, at *13-16 (E.D.Pa. 1996)).

A review of the supplemental documents in Plaintiffs' Notice of Filing Second Supplement (ECF No. 68) shows that the police engaged in investigations into Plaintiff Garrick Krlich's complaints. *See, e.g.*, ECF No. 68-3 at PageID #: 812, 826-27 (complaint regarding truck with Pennsylvania license plates and modified exhaust). Plaintiff Garrick Krlich also testified during his redirect examination at the hearing that there were incidents when he called

(4:17CV0379)

the non-emergency number and a law-enforcement officer was dispatched to his house. The fact that Defendants actually engaged in investigations of Plaintiff Garrick Krlich's complaints of honking horns and revving engines cuts against Plaintiffs' class-of-one claim.

Plaintiffs further respond that Defendants' failure and refusal to investigate and/or prosecute persons who violate City Ordinances is only part of Plaintiff's equal protection claim. The second part of the claim is Defendants' insistence that Plaintiffs follow a special 11-step protocol (ECF No. 51-5)[5] prior to contacting the Hubbard Police Department and/or 9-1-1 Call Center, or they would not respond to, or accept, a noise or harassment complaint from them. The protocol is dated June 6, 2013 and was changed on March 27, 2015. On March 27, 2015, Mark A. Villano, Law Director for the City of Hubbard, Ohio, announced a change in protocol due to the enactment of Ohio Rev. Code § 4511.093(B)(1),[6] which required a law-enforcement officer to be present when a traffic camera is in use. His letter to an attorney that represented Plaintiff Garrick Krlich provides, in relevant part:

> This change in protocol is not a denial of police services to Mr. Krlich. Mr. Krlich can continue to report complaints to the Trumbull Control non-emergency number (330-534-1133). An officer will be dispatched to investigate the incident and issue a citation if the complaint is substantiated by the officer's investigation. The responding officer will not review video evidence, therefore it is Mr. Krlich's responsibility to report complaints in a timely manner. The preceding procedure is *department policy for all non-emergency complaints received* by the City of Hubbard Police Department *from citizens of the City of Hubbard*.

---

[5] ECF No. 68-1 is a copy of the protocol that was referenced during the hearing.

[6] Section § 4511.093(B)(1) was held unconstitutional in *Dayton v. State*, 151 Ohio St.3d 168, 184-85 (2017).

(4:17CV0379)

ECF No. 68-2[7] at PageID #: 735 (emphasis added). Plaintiff Garrick Krlich testified during cross-examination at the hearing that he quit calling in to the non-emergency number "six months to a year ago."

The statute of limitations for a § 1983 claim in Ohio is two years. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc). The case at bar was filed on February 23, 2017. Some of the violations alleged by Plaintiffs occurred beyond the two year statute of limitations period, and Plaintiffs knew or had reason to know of the alleged injury beyond the two year statute of limitations period. Plaintiff Garrick Krlich even testified during his direct examination at the hearing that he instructed his attorneys in 2013 to do nothing but file a § 1983 action against the City of Hubbard. Instead, his attorneys sat down with the Ohio Attorney General's Bureau of Criminal Investigation ("BCI") and the City of Hubbard and negotiated the protocol that was "forced down [his] throat so [he]was forced to follow it." Therefore, Plaintiffs have failed to demonstrate a strong or substantial likelihood of success on the merits.

According to Defendants, Plaintiffs complain merely of unfair treatment, not intentional discrimination resulting in a violation of the Equal Protection Clause. *See, e.g.*, ECF No. 11 at PageID #: 88. Defendants also argue that the Second Amended Complaint (ECF No. 51 -1) does not plausibly allege any constitutional violation that resulted from any official policy or custom attributable to the City of Hubbard. For the reasons stated above and those that have been articulated in the contemporaneously filed Memorandum of Opinion and Order, the Court finds no underlying constitutional violation.

---

[7] Referenced as Exhibit 7 during the hearing.

(4:17CV0379)

In balancing the four considerations applicable to preliminary injunction decisions, the Court holds that equitable relief is not appropriate. Plaintiffs have failed to demonstrate a strong or substantial likelihood of success on the merits of their § 1983 claims. Plaintiff Garrick Krlich's Motion for Preliminary and Permanent Injunction (ECF No. 58) is denied.

Plaintiffs' Motion for Leave to File *Instanter* a Third Supplement to Their Motion for Preliminary and Permanent Injunction (ECF No. 78) is granted without opposition.

Plaintiffs' Motions for Leave to File *Instanter* a Fourth (ECF No. 90) and Fifth (ECF No. 95) Supplement to Their Motion for Preliminary and Permanent Injunction are granted.

Plaintiffs' Request for Expedited Ruling on Their Motion for Injunctive Relief (ECF No. 90) is denied as moot.

The Court remains troubled by the Hubbard Defendants' response (or lack of a response) to questions the Court has posed to their counsel more than once:

> -Why haven't the Hubbard Defendants done something to be physically present to put a halt to this behavior.
>
> -Why haven't they exercised their police discretion to place a police car in the area of Plaintiffs' residence a certain number of minutes per day or on a certain rotation, *e.g.*, between 2:00 a.m. and 4:00 a.m. when the honking of horns, revving of engines (*i.e.*, loud exhaust and/or accelerating hard), and/or screeching of tires is most likely to disturb the peace? (Maybe less attention could be given when Plaintiffs are away from their residence.)

(4:17CV0379)

> -Why aren't the Hubbard Defendants doing something other than sending their attorneys to court to defend them?[8]

Whether there is a violation of constitutional law or not, the Hubbard Defendants ought to respect that Plaintiffs choose to maintain a residence in Hubbard. It would seem that this loyalty would engender some respectful action. Yet none has been taken.

IT IS SO ORDERED.

| | |
|---|---|
| September 19, 2018 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |

---

[8] Defendant James R. Taafe did not appear at the hearing held on Plaintiff Garrick Krlich's Motion for Preliminary and Permanent Injunction (ECF No. 58). Furthermore, no one appeared for Defendant City of Hubbard, Ohio.